J-S35032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: K.A.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.B., MOTHER | No. 621 EDA 2015 |

Appeal from the Order January 7, 2015
in the Court of Common Pleas of Northampton County
Orphans' Court at No.: 2014-0018

BEFORE: MUNDY, J., OLSON, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED JULY 14, 2015**

J.B. (Mother) appeals the order of the Court of Common Pleas of Northampton County, entered January 7, 2015, that terminated her parental rights to her daughter, K.A.K. (Child), born in July of 2006, and changed Child's goal to adoption. We affirm.[1]

The trial court adjudicated Child dependent on November 21, 2012, pursuant to a Child Protective Services (CPS) report that alleged that Mother had struck Child. Child has been in the continuous custody of Northampton County Children Youth and Families (NCCYF) since that time. At the time of

---

* Retired Senior Judge assigned to the Superior Court.

[1] Child's father, J.K., consented to the termination of his parental rights on December 16, 2014. He is not a party to this appeal. (*See* N.T. Hearing, 12/16/14, at 15-16).

her birth, Child tested positive for cocaine due to Mother's drug use. (**See** N.T. Hearing, 12/16/14, at 18). Mother has an extensive history of drug abuse and mental health issues. As a direct result, she has been incarcerated repeatedly and was, at the time of the hearing on this matter, serving a sentence of not less than fifteen nor more than thirty months' incarceration at State Correctional Institution (SCI) Muncy that was to be followed by a consecutive term of thirty-six months of probation. (**See id.** at 49; Petition for Involuntary Termination, 4/24/14, at unnumbered pages 2-5).

NCCYF filed a petition for the involuntary termination of Mother's parental rights on April 24, 2014. The petition alleged that termination would best serve Child's needs and welfare pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

At the hearing on the termination of Mother's parental rights held on December 16, 2014, NCCYF presented the testimony of Child Protective Services Monitor and Caseworker, Cortney Caflin; Diakon Adoption and Foster Care Child Prep and Profile Specialist, Christine Smith-Hoh; and Elizabeth Yost, a licensed professional counselor. Mother testified on her own behalf and presented the testimony of Edwin Garcia, her treating psychotherapist at Lehigh Valley Community Mental Health, and Jennifer Lively, Clinical Director at Recovery Revolution.

Testimony at the termination hearing established that NCCYF has been involved in Child's life since she was born, when they received a general protective service (GPS) referral. NCCYF received subsequent GPS referrals in 2010 and 2011, when Mother "appeared under the influence of alcohol at a Protection From Abuse hearing," and when Child "had fallen out of a second story window." (*Id.* at 18). On November 9, 2012, NCCYF received a CPS report that Mother had struck Child. NCCYF issued a safety plan on November 16, 2012, and placed Child with her paternal grandmother. (*See id.*). Child remained in kinship foster care with her paternal grandmother at the time of Mother's hearing. (*See id.* at 49).

Mother was charged with driving under the influence (DUI) in January of 2013. In February of 2013 she was charged with possession of a controlled substance. (*See id.* at 21). In August of 2013, Mother was charged with burglary, and, in 2014, with forgery. NCCYF established a permanency plan for Mother by which she was to: undergo a psychiatric evaluation and follow up with mental health treatment; submit to a drug and alcohol evaluation and random urine screens; maintain stable income and housing for at least six months; and attend supervised visitation with Child. (*See id.* at 22). Mother's compliance with NCCYF's permanency plan was tenuous, at best.

Mother was unable to maintain stable housing for a period of at least six months. When she was not incarcerated, Mother floated between her

mother's residence and shelters. (*See id.* at 23). Mother was unable to maintain stable employment and steady income, although she sporadically worked as a waitress from March, 2013 to September, 2014. (*See id.* at 24-25).

On March 1, 2013, Mother completed a psychiatric evaluation through Lehigh Valley Community Mental Health. (*See id.* at 27). The evaluation determined that Mother "was diagnosed upon Axis I with bipolar I disorder, with the most recent episode as manic, and Axis II as havoc abuse." (*Id.*). The recommendation was for medication management and individual therapy weekly. Mother, however, failed to appear for appointments "during the months of June, July, and August or September of 2013." (*Id.*). Mother attended her weekly therapy sessions in October of 2013 and for a time thereafter.

The Lehigh Valley Drug and Alcohol Intake Unit performed drug and alcohol evaluations of Mother in both 2012 and 2013. (*See id.* at 31). The recommendations were consistent in calling for "Level 3 long term residential treatment in a program designed for individuals with co-occurring disorders." (*Id.*). Mother refused the treatment, stating, "she didn't feel the treatment was necessary." (*Id.* at 33). Mother elected instead to enroll in outpatient treatment at Northeast Treatment Center. She was discharged due to non-compliance on March 21, 2013. (*See id.*). Mother was admitted into Brandywine Bowling Green for inpatient treatment on July 9, 2013, but "left

against medical advi[c]e from the facility a few days later." (**Id.** at 34). On September 4, 2013, Mother completed a program at White Deer Run Treatment Center. (**See id.** at 35). Mother then relapsed and incurred new criminal charges for forgery. Mother was incarcerated in Northampton County Prison on January 31, 2014. While in prison, Mother completed the Sister to Sister drug and alcohol program. According to Jennifer Lively, the clinical director of Recovery Revolutions who administers the Sister to Sister program, she observed positive changes in Mother. (**See id.** at 145-46). Mother was released on June 9, 2014. (**See id.** at 37).

In July 2014, nearly one month following her release, Mother exhibited signs of drug use when her weekly random urine screens came up abnormal or positive. When NCCYF met with Mother at the end of August, 2014, she admitted to drug use. (**See id.** at 38-39). On or about September 2, 2014, Mother met with her probation officer who gave her the choice to reenter treatment or return to prison. Mother entered Valley Forge Hospital on September 3, 2014, for detox and inpatient treatment. (**See id.** at 41). Valley Forge discharged Mother on September 19, 2014, and directed her to follow-up with outpatient treatment. (**See id.**). Mother was re-incarcerated on a probation violation in Lehigh County on October 14, 2014, and is currently serving a sentence of not less than fifteen nor more than thirty months in SCI Muncy. Mother admits that the earliest she will be out on

parole is the fall of 2015, and that she will go from jail to a halfway house. (***See id.*** at 67).

Despite her substance abuse issues and intimacy with the criminal justice system, Mother loves Child and has, whenever possible, taken advantage of supervised visits with Child, sent her cards and letters, and received Child's school report cards, projects and photographs. (***See id.*** at 82). Child "loves her mother and . . . she wishes that she was doing well." (***Id.*** at 49).

However, Child is in a stable home with a structured routine. Child's behavior has markedly improved since placement with her paternal grandmother. (***See id.*** at 50). She is "less anxious and not as easily upset" or reactive and is "able to process things a little bit better." (***Id.***). Child and her paternal grandmother are affectionate and loving with each other. (***See id.*** at 100). Since placement, Child has earned good grades in school and is showing pride in her schoolwork and enjoying friendships with other children. (***See id.*** at 175-76). According to Elizabeth Yost, Child's counselor, Child is "feeling very stable" with her paternal grandmother and has "a lot of trust with her grandmother[.]" (***Id.*** at 177). Child "really cares about [Mother], but she knows that [Mother] is not able to take care of her." (***Id.*** at 180). Child "wants to move on and continue with the way her life is going." (***Id.***).

The trial court entered its order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b) on January 7, 2015. Mother filed her notice of appeal on February 3, 2015, and her statement of errors complained of on appeal on February 17, 2015.[2] **See** Pa.R.A.P. 1925.

Mother raises the following questions on appeal:

1. Whether the trial court erred in finding that [NCCYF] demonstrated, by clear and convincing evidence, that Mother has refused or failed to perform parental duties for a period of at least six months and demonstrated repeated and continued incapacity . . . [sic] neglect or refusal, causing [Child] to be without essential parental care, control, or subsistence necessary for her physical or mental well-being and the conditions and causes of the incapacity, . . . [sic] and that the neglect or refusal cannot or will not be remedied by Mother, thereby establishing the grounds for termination of Mother's parental rights under 23 Pa.C.S.A. Section 2511 (a)(1), (2)?

2. Whether the trial court erred in finding that [NCCYF] met its burden and demonstrated, by clear and convincing evidence, that [Child] has been removed from the natural parent for a period of at least twelve months, and the conditions which led to the removal or placement of [Child] continue to exist, in that Mother cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the Mother are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights best serves the needs and welfare of the child. 23 Pa.C.S.A Section 2511 (a)(5) and (a)(8)?

_____

[2] Because there was no objection or claim of prejudice from NCCYF, we have accepted the late filing of Mother's Rule 1925(b) statement in reliance on our decision in **In re K.T.E.L.**, 983 A.2d 745, 747-48 (Pa. Super. 2009).

3. Whether the trial court erred in finding that [Child] does not have a strong emotional bond with Mother, and severing this bond would not cause [Child] to suffer a loss or destroy something necessary and beneficial to [Child's] emotional well-being?

4. Whether the trial court erred in finding that termination was in the best interests of [Child]?

5. Whether the trial court erred in finding that no compelling reasons exist to refrain from terminating Mother's parental rights?

(Mother's Brief, at 6-7).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are

- 8 -

clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. . . .

*In the Interest of S.G.*, 922 A.2d 943, 946-47 (Pa. Super. 2007) (citation omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re T.F.**, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted).

Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**In the Interest of K.Z.S.**, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and

convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties.  **See In Re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

**In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1988) (citation omitted).

Additionally,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

**In re B., N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.A. § 2511(b).  The Act does not make

specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. ***See In re E.M.***, 620 A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court "is not required by statute or precedent to order a formal bonding evaluation performed by an expert." ***In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008) (citation omitted).

In regard to incarcerated persons, our Supreme Court has stated:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.
>
> \*   \*   \*
>
> . . . [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). ***See e.g. Adoption of J.J.***, 515 A.2d [883,] 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); ***[In re:] E.A.P.***, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical,

and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

***In re Adoption of S.P.***, 47 A.3d 817, 828, 830-31 (Pa. 2012).[3]

In considering Mother's first issue, we have chosen to analyze her case pursuant to 23 Pa.C.S.A. § 2511(a)(1). ***See B.L.W.***, ***supra*** at 384. Mother argues that the trial court abused its discretion in terminating her parental rights pursuant to subsection (a)(1):

> In the case at hand, Mother has not exhibited a settled purpose of abandoning [Child] or otherwise relinquishing parental rights. Mother has remained in contact with [Child] and has demonstrated her intention to remain in [Child's] life. Mother appeared at trial to contest the termination of her parental rights. Mother believes and therefore avers that she has not exhibited a "settled purpose" of relinquishing parental claim to [Child]. To the contrary, she has repeatedly [expressed] a desire to parent [Child]. This is not a "settled purpose" towards relinquishment.

(Mother's Brief, at 15). We disagree.

Even when she was not incarcerated, Mother did little to parent Child. The fact that Mother believes she has not exhibited a settled purpose of relinquishing her rights and the fact that she has repeatedly stated her desire to parent Child do not change the fact that she has not parented Child

_____

[3] The Pennsylvania Supreme Court cited its decision in ***In re: Adoption of McCray***, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time. ***See S.P.***, ***supra*** at 828.

for over two years. We quote the trial court's analysis of this issue, with approval:

> [NCCYF] has presented clear, convincing, and competent evidence to support termination of Mother's parental rights pursuant to Section 2511(a). [Child] has been removed from Mother's care for over two (2) years and the conditions which led to [Child's] removal continue to exist. Mother cannot fulfill her parental duties to [Child] as she is not capable of meeting the essential needs of the young child and will be unable to do so within a reasonable time. Mother's repeated drug use, mental health issues and criminal activity throughout [Child's] life, show a pattern of incapacity to parent, particularly while not incarcerated. Mother is currently incarcerated at SCI Muncy and will be for the foreseeable future. Mother's future with respect to adequate housing and employment is completely indefinite. While it appears that Mother has managed to remain drug-free in the confines of incarceration, whether she can maintain that status among the external pressures of the outside world remains to be proven. One can only speculate as to what the future conditions of Mother's release from incarceration will entail and how soon she would be permitted to have supervised visits, let alone overnight visitation or full custodial care of a child she hasn't parented in years. In fact, Mother's life-long history of involvement with drug use bears heavily upon her probability of success. Mother will face significant challenges in achieving a sober and productive lifestyle. More importantly, we acknowledge the likelihood of severe detriment to [Child's] developmental well-being if she were re-introduced to Mother's precarious lifestyle of uncertainty, drug abuse, homelessness and lack of any financial stability.

(Trial Court Opinion, 1/07/15, at 9-10).

Because we have chosen to restrict our analysis of Mother's argument pursuant to subsection (a)(1), we need not address her arguments pursuant to subsections (a)(5) and (8) in her second issue. (**See** Mother's Brief, at 6); **see also B.L.W.**, **supra** at 384.

We will address Mother's issues three and four together as a challenge to the trial court's determination regarding the best interests of Child under subsection (b). (*See* Mother's Brief, at 7). Mother argues that the trial court abused its discretion in terminating her parental rights pursuant to subsection (b) because it failed to order a bonding assessment. (*See id.* at 18). We disagree.

A trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008). That being said, we quote the trial court's analysis of Child's best interests, with approval:

> At the termination hearing, Christine Smith-Hoh, Elizabeth Yost and [Child's] [NCCYF] caseworker, Cortney Caflin all testified that the needs and welfare of [Child] dictate termination of parental rights and a goal change from reunification to adoption. Mother's love and affection toward [Child] are not in dispute. Mother attended her weekly supervised visitation with [Child]. During those visits, Mother and [Child] were affectionate to one another. (*See* N.T. Termination Hearing, 12/16/14, at 83-85). Mother sent cards and letters to [Child] on a regular basis and was always interested in her school progress, reports, and projects and, receives photographs of her daughter. (*See id.* at 82). However, [Child] has benefited from placement by [NCCYF] with paternal grandmother and that developmental progress should not be thwarted. Even at the tender age of eight, [Child] recognizes that while she "loves her mother and wishes she was doing well," she enjoys the stability and structure of her grandmother's home. (*Id.* at 49). "[Child] and her grandmother are affectionate." (*Id.* at 100). Paternal grandmother tends to all of [Child's] educational, emotional, social and medical needs in addition to providing for her basic needs of food, clothing and shelter. [Child] "really believes that her grandmother can take care of her in the way that she needs to be taken care of." (*Id.* at 179-80). "She really cares about

[Mother], but she knows that [Mother] is not able to take care of her." (**Id.**).

(Trial Ct. Op., at 11-12) (record citation formatting provided).

Mother does not raise issue number five in her statement of errors complained of on appeal, nor does she address it in her brief. (**See** Mother's Brief, at 7, 11-19; Rule 1925(b) Statement, 2/17/15, at 1). Therefore, she has waived the issue. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008) (same).

In the body of her brief, Mother also raises the question of whether NCCYF had made reasonable efforts to reunite her with Child. (**See** Mother's Brief, at 18-19). However, she also waived this issue for her failure to include it in either her statement of errors or in her questions presented. (**See id.** at 6-7; Rule 1925(b) Statement, 2/17/15, at 1); **see also Yates**, **supra**. at 542; **Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (noting that we will not address an issue that is not included in the statement of questions involved in appellant's brief, citing Pa.R.A.P. 2116(a)).

Testimony adduced at the hearing in this matter established that, for at least the six months immediately preceding the filing of NCCYF's petition to terminate Mother's parental rights, Mother either evidenced a settled purpose of relinquishing her parental claim to Child or refused or failed to

perform her parental duties. That testimony also established that Child has been in placement with her paternal grandmother for more than two years and that she is thriving in that placement.

Accordingly, we affirm the order of the Court of Common Pleas of Northampton County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b), and changed Child's goal to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2015