J-S88001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  X.M., CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF:  L.F., FATHER | No. 1516 EDA 2016 |

Appeal from the Order of April 11, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-AP-0000028-2016

BEFORE:  OLSON, RANSOM AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON:                              **FILED DECEMBER 16, 2016**

L.F. (Father), appeals from the order entered on April 11, 2016, granting the petition filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate Father's parental rights to his dependent child, X.M. (Child), a male child born in November 2014, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b).[1]   Upon review, we affirm.

The trial court set forth the facts and procedural history of this case as follows:

> The family in this case became known to DHS on November 9, 2014, the date of Child's birth, when DHS received a

---

[1] X.V.-M., Child's mother (Mother), filed an appeal from the April 11, 2016 order terminating her parental rights to Child.   We affirmed in an unpublished memorandum decision on October 12, 2016.  ***See In the Interest of X.A.M.***, 2016 WL 5946710 (Pa. Super. October 12, 2016). Mother is not a party to the current appeal.

*Retired Senior Judge assigned to the Superior Court.

General Protective Services (GPS) report stating that (Mother) had tested positive for PCP, had been the victim of Father's domestic violence and had a history of mental health problems. On November 10, 2014, Father visited Child at the hospital and informed the hospital staff that he would not be able to care for Child. On November 26, 2014, Mother contacted her mother and asked her to care for Child. Mother's mother took Child to an aunt's home.[2] On November 28, 2014, DHS visited the aunt's home and observed that the aunt did not have adequate food. The same day, DHS obtained an Order for Protective Custody (OPC) and placed Child in a [c]risis [n]ursery program. Child was adjudicated dependent on December 10, 2014. At a March 3, 2015[] permanency review[,] the [trial] court found aggravated circumstances as to Mother, since her parental rights to another child had been involuntarily terminated on June 9, 2014. The [trial] court ordered that DHS reach out to Father and that Father make himself known. Father never attended permanency review hearings or made himself available to DHS. DHS filed a petition to change Child's permanency goal to adoption and involuntarily terminate Mother's and Father's parental rights on January 12, 2016.

The goal change and termination trial was held over two days, January 28, 2016, and April 11, 2016. On January 28, 2016, the [] case manager testified […] she had attempted to contact Father, but she did not know his address and [he] had no working telephone. The [] case manager eventually made contact, and informed Father of his bi-weekly scheduled visits with Child. Father attended one visit during the life of the case, on the day before the termination trial began. Father's [] objectives were to remain in contact with [the case manager], complete domestic violence counseling and attend scheduled visits with Child. The [] case manager discussed these objective[s] with Father when she got in contact with him in July 2015. Father was engaged with domestic violence

---

[2] The trial court references an "aunt" in its opinions. However, neither the trial court's opinions nor the certified record specifies the aunt's relationship to Mother, Father, or Child.

counselling, but dropped out of contact [] between July 2015 and January 2016. Father contacted [the case manager] in January 2016 [to] ask for [assistance] to get to his domestic violence class, and did not request a visit with Child. [The case manager] had to encourage him to schedule the visit. The [] case manager testified there was no bond between Child and Father [and] Child would not suffer any irreparable harm if Father's rights were terminated. Child is currently placed with Foster Parents. The [] case manager testified that Child is bonded with the Foster Parents, who have a parent-child relationship with him and provide for all his needs. Child's sister has been adopted by Foster Parents, and they seek to adopt Child as well. Child and his sister have a loving sibling relationship and are bonded with each other. Adoption by the Foster Parents would be in Child's best interest. Father testified as of [sic] cross that he did not have the [] case manager's contact information, and could only get in contact with her through his domestic violence counsellor.

\* \* \*

On April 11, 2016, the [] case manager testified that […] Mother and Father [were] visit[ing] Child together, and [] made their monthly scheduled visits since January 28, 2016, when the termination trial started. […] Father has only attended five visits since Child came into care. Mother's and Father's housing [had] not been assessed. The [] case manager rated Mother and Father fully compliant. Child is bonded to the Foster Parents, who have cared for him for sixteen months. Following argument, the [trial] court terminated Mother's and Father's parental rights to Child under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and (b), finding there would be no irreparable harm if Mother's or Father's rights were terminated. The [trial] court also thought it was in Child's best interest to be adopted, and changed the permanency goal to adoption.

- 3 -

Trial Court Opinion, 5/24/2016, at 1-4 (record citations omitted). This timely appeal followed.[3]

On appeal, Father raises the following issues for our review:

1. Did the [trial] court [] err in finding that grounds for termination of parental rights had been proven by "clear and convincing evidence?"

2. Did the [trial] court [] err in finding that [DHS], had met its burden in proving grounds under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8)?

3. Did the [trial] court [] err in finding that DHS had met its burden to prove that termination would be in [Child's] best interests, under § 2511(b)?

4. Did the [trial] court [] err in denying [d]ue [p]rocess and [e]qual [p]rotection of [l]aw to [Father,] as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

Father's Brief at 4.

_____

[3] Karen Deanna Williams, Esquire represented Father at the termination proceeding. After termination, on April 20, 2016, the trial court appointed Neil Krum, Esquire for "appeal purposes only." However, on May 9, 2016, Father filed a timely *pro se* notice of appeal and accompanying concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2). Father sent copies of the notice of appeal and Rule 1925(a)(2) statement to what appears to be his counsel's address and to Mother's counsel. Father's counsel did not file an amended Rule 1925(a)(2) statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), treating Father's appeal as a challenge to "the goal change and termination of his parental rights under the Adoption Act sections 2511(a)(1), (2), (5), (8) and (b)." Trial Court Opinion, 5/24/2016, at 4. Attorney Krum filed an appellate brief on Father's behalf. Father's *pro se* concise statement included all issues raised and developed on appeal, except due process and equal protection arguments as will be discussed.

Father's first two issues are inter-related, so we will examine them together. Father claims the termination of his parental rights was not proven by clear and convincing evidence. *Id.* at 11. He claims there is "a lot of confusion" regarding "what kind of outreach was done by DHS[,]" because there were contact problems with Father. *Id.* Father avers that Child's case manager found him fully compliant with his reunification objectives, but the trial court erred when it opined compliance was possible "only because his objectives were so minimal." *Id.* at 14. He further suggests "[t]here is no indication that there was any real concern that Father's housing might be determined to be inappropriate." *Id.* at 15.

Our standard of review regarding the termination of parental rights is well-established:

> In cases involving termination of parental rights, our scope of review is broad. All of the evidence, as well as the trial court's factual and legal determinations, are to be considered. However, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child. We have always been deferential to the trial court as the fact finder, as the determiner of the credibility of witnesses, and as the sole and final arbiter of all conflicts in the evidence. Moreover, this Court will affirm a termination of parental rights if competent evidence supports the trial court's findings, even if the record could support an opposite result.

*In re S.D.T., Jr.*, 934 A.2d 703, 705–706 (Pa. Super. 2007) (internal citations omitted).

The termination of parental rights is controlled by the Adoption Act.[4] *In re Adoption of R.J.S.*, 901 A.2d 502, 507 (Pa. Super. 2006). The party seeking termination of parental rights has the burden of proving, by clear and convincing evidence, that sufficient grounds for termination exist. *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citations and quotation omitted). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002) (quotation omitted).

This Court "need only agree with the [trial court's] decision as to any one subsection [of Section 2511(a)] in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Accordingly, for the purpose of our review, we will focus on the termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8). The relevant statutory provisions state, in pertinent part:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>       *        *        *

---

[4] 23 Pa.C.S.A. §§ 2101–2910.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**[…] With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

When considering a termination petition, the trial court must initially focus on the conduct of the parent, and determine whether statutory grounds for termination under Section 2511(a) are met. ***In re Adoption of R.J.S.***, 901 A.2d at 508. Subsection (a)(8) requires clear and convincing proof "(1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child." ***Id.*** at 511. In a Section 2511(a)(8) analysis, the focus is solely on whether the conditions which led to the child's initial placement continue to exist. "Termination under Section 2511(a)(8) does **not require the court to evaluate a parent's current willingness or ability to remedy the conditions** that initially caused placement or the availability or efficacy of

- 7 -

Agency services." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (emphasis added) (citations omitted). This Court has explained:

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of [the] children. … However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen (18) months, in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*In re Adoption of R.J.S.*, 901 A.2d at 513 (emphasis in original) (citations omitted). "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (internal quotation omitted).

Furthermore, "we are instructed that we may not consider any effort by the parent to remedy the conditions described in subsection[](a)(8) if that remedy was initiated after the parent was given notice that the termination petition had been filed." *In re Z.P.*, 994 A.2d at 1121 (citation omitted); 23 Pa.C.S.A. § 2511(b). Further, this evidentiary limitation

applies to the entire termination analysis. *Id.* The trial court, however, may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date. *Id.*

In this case, Child was removed from Father's care and custody for more than one year. Child was placed in protective custody on November 28, 2014. DHS filed its petition to terminate Father's parental rights on January 12, 2016. Thus, the first requirement of Section 2511(a)(8) was clearly satisfied.

Next, we examine whether the conditions that led to the removal of Child continue to exist. Here, the conditions that led to the Child's removal included, *inter alia*, Father's domestic abuse of Mother and Father's complete lack of contact with Child. When the case manager was able to interact with Father, seven months after removal, she told Father that his objectives were to maintain regular contact with her, engage in scheduled visitation with Child, and seek domestic violence counseling. N.T., 1/28/2016, at 18-20. Despite providing her contact information, Father did not maintain any contact with Child's case manager from their initial conversation on July 22, 2015 until the middle of January of 2016. *Id.* at 15-17, 19-20. During that time, the case manager's contact information remained the same. *Id.* at 15. As of the first termination hearing, Father only had one visit with Child, which took place the day before the January 28, 2016 hearing or on January 27, 2016. *Id.* at 16. Thereafter, Father had four additional visits with Child.

N.T., 4/11/2016, at 6. Father did not start domestic counseling until the beginning of January of 2016. N.T., 1/28/2016, at 60. Again, the docket reflects that DHS filed the petition to involuntarily terminate Father's rights on January 12, 2016.

Based upon an examination of the foregoing, it is clear that Father did not begin visitation until after he received notice of the termination petition and, thus, the trial court could not consider any of those visitation efforts. *In re Z.P.*, *supra*. Father simply did not exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. *In re C.M.S.*, *supra*. Child's life cannot be held in abeyance while Father attempts to attain the maturity necessary to assume parenting responsibilities. *In re Adoption of R.J.S.*, *supra*. Father was not involved in Child's life, which led to removal. Over a year had passed and Father only visited Child under the threat of termination of his parental rights. This evidence was clear and convincing for termination under Section 2511(a)(8) and, thus, we need not consider whether Father complied with his domestic counseling objectives. The trial court determined the conditions that led to Child's removal remained, and the record supports the trial court's determination.

Next, Father argues the trial court erred by terminating his parental rights under 23 Pa.C.S.A. § 2511(b). Father's Brief at 17-19. He contends

that there was no discussion about bonding or lack thereof between Father and Child. *Id.* at 19.

Section 2511(b) provides as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. [...]

23 Pa.C.S.A. § 2511(b).

In reviewing the evidence in support of termination under Section 2511(b), we consider whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re C.M.S.*, 884 A.2d at 1286-1287. "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect of permanently severing that bond with the child. *See id.* This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

In this case, Child was 19 days old when removed from parental care. Child has been in foster care most of his life, thus, the bond between Child

and Father was attenuated. The case manager testified that Child was primarily bonded to his foster parents, Child was living with and bonded to his older biological sister, and there would be no negative impact on Child if Father's bond was severed. N.T., 1/28/2016, at 22-26 We conclude there was clear evidence that termination of Father's parental rights would best serve the developmental, physical and emotional needs and welfare of Child pursuant to Section 2511(b).

Finally, Father argues that parenting "implicate[s] fundamental rights which are entitled to protection under the 14th Amendment of the United States Constitution Due Process and Equal Protection Clauses, and the Constitution of the Commonwealth of Pennsylvania." Father's Brief at 19-21. More specifically, Father relies upon the United States Supreme Court decision in **Stanley v. State of Illinois**, 405 U.S. 645 (1972), a case out of Illinois wherein "state law protected rights of parents, but excluded some classes of parents, including unwed [f]athers." **Id.** at 20.

Initially, we find Father waived his constitutional contentions for failing to raise them in his Rule 1925(a)(2) statement. "As this argument was not raised in Father's [concise] statement, it is waived." **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008); **see also** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Moreover, this Court will not address issues not properly raised before the trial court. **See**

Pa.R.A.P. 302(a) (stating that issues not raised in the trial court will be deemed waived on appeal). Additionally, although Father refers to due process on appeal, he does not develop that aspect of the claim in his appellate brief. Thus, Father additionally waived this portion of his argument for lack of development. *See* Pa.R.A.P. 2119 (requiring a properly developed argument for each question presented including a discussion of and citation to authorities in appellate brief).

Even if we were to overlook issues surrounding waiver and improper preservation and development of this claim, we would conclude that Father is not entitled to relief because his argument is patently devoid of merit. Father's argument centers on a case discussing equal protection. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *In re Adoption of C.J.P.*, 114 A.3d 1046, 1057 (Pa. Super. 2015). Father simply does not set forth how or why he was treated differently than other similarly situated fathers facing termination of their parental rights. Regardless, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . [his] child is converted, upon the failure to fulfill . . . [his] parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). "Parental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* at 855. It is well-settled that courts may not toll the well-being and permanency of a child indefinitely. *In re C.L.G.*, 956 A.2d 999, 1007 (Pa. Super. 2008) (*en banc)*, *citing* *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."). Thus, Appellant's fourth issue has been waived, and is otherwise without merit. Accordingly, after a careful review, we affirm the order terminating Father's parental rights to Child on the basis of Section 2511(a)(8) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016