J-S35018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KEEGAN MOYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHERLYN MOYER | : | No. 809 MDA 2023 |

Appeal from the Order Entered May 8, 2023
In the Court of Common Pleas of Berks County Civil Division at No(s):
22-11951

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: NOVEMBER 20, 2023**

Keegan Moyer ("Father") appeals from the order granting Sherlyn Moyer ("Mother") sole legal custody their three minor children ("the Children"), granting Mother's relocation request, and reducing Father's periods of physical custody from two weekends to one weekend per month. We affirm.

Mother and Father were married in 2011 and resided with the Children (born in 2013, 2014, and 2017) in Berks County. Mother and the Children left the marital home in June 2022 to visit Mother's sister and brother-in-law in Somerset County. They did not return to Berks County.

Mother filed a Protection from Abuse petition in Somerset County. In July, the Somerset County Court of Common Pleas entered a stipulated two-year Protection from Abuse Order that awarded Mother primary physical

_____

[*] Retired Senior Judge assigned to the Superior Court.

custody and gave Father physical custody of the Children every other weekend. Mother also filed a divorce complaint in Somerset County, which included a custody count. Later that summer, Mother registered the two older children for school in Somerset County.

Meanwhile, Father filed a "Petition for Interim Relief and to Confirm Proper Jurisdiction and Venue" in Berks County. Somerset County transferred Mother's custody action to Berks County. The Berks County Court of Common Pleas held a one-day trial on the custody matter in April 2023.

After trial, the court issued a Decision and Order explaining its findings regarding the parties' history. It found that Father had become "abusive and threatening to both Mother and [the Children]." Decision and Order, 5/8/23, at 4. It found that in November 2021, Father had sexually assaulted Mother.[1] In February 2022, Father became angry when the oldest child, L.K.M., had a stomachache that prevented him from attending a show. Father "raised his voice, used profanity, and punched a door[.]" *Id.* at 5.

Father again became aggressive on another occasion in early 2022, after L.K.M. refused to get ready to leave for an outing, yelled at Father, and locked himself in a bedroom. *Id.* at 5-6.[2] Father broke through the bedroom door, yelled at L.K.M., and threatened to "smash the f*** out of" a Nintendo Switch. Father stated that L.K.M. could get a job or do chores to save $400 to earn a

---

[1] Father had "choked [Mother] with her sweater before penetrating her without her consent." Decision and Order at 4.

[2] Mother introduced an audio recording of this event.

Nintendo Switch. Father refused Mother's request that he stop screaming at L.K.M.

The day before Mother and the Children left for Somerset County, "Father told Mother that he could kill her, there was nothing she could do about it, and he could do it easily. While saying these things, Father grabbed Mother by the throat and forced her to the ground." *Id.* at 6. Father also "told Mother he could kill her, and no one would know." *Id.*

The court also found that Mother had attempted to obtain services for L.K.M.'s behavioral issues while they resided with Father, but Father had refused, believing the issues to be a discipline problem. L.K.M. had only ever received speech services, despite Mother's concerns that more treatment was necessary. After Mother and the Children relocated to Somerset County, Mother attempted to get L.K.M. evaluated for his behavioral issues, but Father still would not give his consent. When L.K.M. repeatedly refused to attend school, Somerset County Children and Youth Services became involved. In January 2023, a few months before the custody trial, a doctor evaluated L.K.M. and diagnosed him with autism spectrum disorder ("ASD"). L.K.M. was nine years old at the time. The doctor, who testified as an expert, stated she had wished she had seen L.K.M. "long ago," believing that he had displayed "red flags" of ASD for years, and that significant damage had been done to him by the lack of earlier diagnosis or treatment. *Id.* at 19. The Children's school district in Somerset County has since recognized L.K.M.'s diagnosis, and he is receiving treatment with Mother's cooperation and participation.

The Decision and Order also outlines the court's consideration of each of the custody factors of 23 Pa.C.S.A. § 5328(a) and the relocation factors of 23 Pa.C.S.A. § 5337. In short, the court found Father tries to depict Mother as a bad mother, and that Mother is afraid of, and intimidated by, Father. The court found Mother has traditionally performed most parental duties and is more likely to consider and attempt to meet the emotional needs of the Children.

The court found Father's confidence in his abilities to care for the Children misplaced, noting Father has not even investigated whether L.K.M. or the younger children could receive any necessary services in Berks County. The court also found that the episode where Father broke the door to L.K.M.'s room to berate him "raise[s] grave concerns that Father does not understand or appreciate his son's disability." *Id.* at 20. The court stated Father's remarks during the confrontation show that "Father is either naïve or simply choosing not to understand" L.K.M.'s disability. *Id.* at 21. It also noted that the doctor testified that due to his disability, L.K.M. forms obsessional interests and makes noise when he gets upset. While the agreement with the school district in Somerset County calls for using a calm voice when addressing L.K.M., "Father chooses to yell and scream." *Id.*

The court found that removing L.K.M. from his new support system would be disruptive and harmful to both him and the other children. It stated, "The age, developmental stage, and needs of the [the Children] are immense and a court order requiring Mother to return to Berks County could prove to

have a profound negative impact on their physical, educational and emotional development, especially in light of L.K.M.'s special needs." *Id.* at 23. The court also "heavily weigh[ed] Mother's testimony regarding her safety and the stability of the [the Children's] physical, educational and emotional development as established in Somerset County." *Id.* The court also considered that Mother has extended family in both Berks and Somerset Counties. It observed that Father should be able to connect with the Children during Mother's custody periods through telephone or other electronic means.

In addition to considering the custody and relocation factors, the court considered that Mother had relocated without providing notice to Father or getting his consent. However, the court found that Mother's decision was a direct result of Father's abusive and threatening conduct, and that this excused Mother's failure to provide notice. It also found that Father's motive for opposing Mother's relocation is "his desire to succe[ed] in a conflict with Mother" rather than the Children's best interest. *Id.* at 26. Given the foregoing, the court concluded it would "not disturb the relocation." *Id.*

The court also considered whether to award shared legal custody. It stated,

> The [c]ourt is not convinced Father is capable of making reasonable child rearing decisions. Given the needs of [the Children], decisions relating to the health and well-being of [the C]hildren may need to be made quickly. Father has demonstrated that he does not act in a timely ma[nn]er or even understands the help needed. Further, the [c]ourt finds the parties['] different view of the [Children's] needs interferes with the need for a minimal degree of cooperation.

*Id.* at 28.

The court awarded Mother primary physical custody of the Children. It gave Father one weekend of custody per month, some holidays, and for three weeks in the summer. The court awarded Mother sole legal custody.

Father appealed. He raises the following:

I. Did the trial court err or abuse its discretion in determining Mother should be permitted to relocate with the Children to Somerset County despite the fact that she did not comply with the requirements of the relocation statute?

II. Did the trial court err or abuse its discretion in awarding Mother sole legal custody?

III. Did the trial court err or abuse its discretion in awarding Father only one weekend per month with the Children despite prior history?

Father's Br. at 4.

Father first argues the court erred in granting Mother's relocation request. He claims the court failed to consider that Mother relocated with the Children without his consent or without giving notice.[3] He also argues that the court erred in its consideration of the relocation factors and focused solely on Father's alleged abuse to the exclusion of any other factors.

---

[3] Father relatedly argues that the court failed to hold a relocation hearing prior to trial. As we do not find this issue fairly suggested by Father's Rule 1925(b) statement, and as the trial court did not address it, it is waived. *See* Pa.R.A.P. 1925(b)(4)(vii). Father also fails to state where he raised this issue in the trial court, and we note that he entered into a stipulated Protection from Abuse Order shortly after Mother relocated, giving Mother primary custody.

Father argues that under Factor 1, the evidence showed that he had historically helped the Children get ready for school, and that "the trial court seemed to brush off any involvement by Father[.]" *Id.* at 19. He also claims the trial court did not consider the proximity the Children had to Mother's extended family before they relocated. He claims that under Factor 3, the court did not attempt to protect Father's relationship with the Children. He asserts that although the court left the possibility of extra communication between Father and the Children up to the parties, Father has no ability to ensure any communication with the Children during Mother's custody periods. Father argues that under Factors 2 and 10, the court misinterpreted the relocation statute by implying that returning the Children to Berks County would be a "relocation." Father highlights that Mother already relocated when she took the Children away from their school and activities. Father similarly argues that under Factors 6 and 7, the court baldly surmised that relocation would improve the Children's lives, without analyzing the effect of taking them away from their friends, family, and school. Under Factor 8, Father claims the court failed to consider that Father testified that if the court denied the relocation, Father would consent to Mother having primary custody.

In his second issue, Father argues the court erred in awarding Mother sole legal custody. He argues the court placed too much weight on the audio recording of his confrontation with L.K.M. on the date Father broke the door, because this event occurred before L.K.M. was diagnosed with ASD, when

Father was still ignorant of his son's condition.[4] Father also argues that while the parties have a strained relationship, they were able to work together prior to trial, and the court should have given greater weight to their ability to meet at a neutral place for months so that Father could exercise partial custody. Father also claims the court ignored "Mother's attempt to skirt the relocation law" when deciding who should make legal decisions for the Children. *Id.* at 25. Father ultimately argues the court "has essentially cut out Father from having any say in [C]hildren's lives because he lost his temper on two occasions but did not harm any of his children on those occasions." *Id.*

In his third issue, Father argues the court erred in awarding him only one weekend of physical custody per month. Father argues there was no testimony that he ever harmed the Children. He also stresses that he had been meeting Mother at a neutral location to exchange the Children every other weekend since Mother unilaterally relocated them. He argues that Mother's relocation has pulled the Children from their home, school, friends, and family, and that the court exacerbated those disruptions to the Children's stability by reducing the time they spend with Father.

Review of a custody order requires us to "accept the factual findings of the trial court that are supported by competent evidence of record and . . .

---

[4] Father relatedly argues the court erred in overruling his objection to the admission of the audio recording, on the basis that it violates the Pennsylvania Wiretapping and Electronic Surveillance Control Act. However, as this issue is not fairly suggested by Father's Rule 1925(b) statement, and the trial court did not address it, we consider it waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

defer to the trial court's weighing of the evidence." ***S.S. v. K.F.***, 189 A.3d 1093, 1098 (Pa.Super. 2018). This is because "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." ***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa.Super. 2006) (citation omitted). We will only reject a trial court's decision if it is unreasonable in light of the court's sustainable findings, involves an error of law, or constitutes an abuse of discretion. ***S.S.***, 189 A.3d at 1098.

We will begin by addressing Father's first and third issues, relating to relocation and physical custody, as these issues are interrelated. Pursuant to the Child Custody Act, a custodial party seeking to relocate a child's residence must first provide notice to the other custodial parties. 23 Pa.C.S.A. § 5337(c). Upon any objection to the relocation, the court must hold a hearing and consider whether relocation is warranted under the relocation factors of Section 5337(h). ***Id.*** at § 5337(g), (h). Those factors are

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* at § 5337(h). The court must give "weighted consideration to those factors which affect the safety of the child[.]" *Id.*

When a custodial parent fails to give notice of a proposed relocation, the court can consider this as:

(1) a factor in making a determination regarding the relocation;

(2) a factor in determining whether custody rights should be modified;

(3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;

(4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and

(5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

*Id.* at § 5337(j). The court is also prohibited from conferring "any presumption in favor of the relocation," if the party has relocated a child's residence prior to the hearing. *Id.* at § 5337(l). However, "[a]ny consideration of a failure to provide reasonable notice . . . shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse." *Id.* at § 5337(k).

"If the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a)." *S.S.*, 189 A.3d at 1098. Those factors are:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). The court must use the factors to "determine the best interest of the child," again "giving weighted consideration to those factors which affect the safety of the child[.]" *Id.* Importantly, the court should avoid dissociating the issue of primary custody from the issue of relocation. It should instead decide the two issues together under a single umbrella of best interests of the children. *S.S.*, 189 A.3d at 1098.

We find no merit to Father's assertions that the court erred or abused its discretion in permitting the relocation, awarding Mother primary custody, and reducing Father's custody time to one weekend per month. Although the court did not give each relocation and custody factor equal weight, it was not

required to do so. The Act only requires the court to consider each factor, give weighted consideration to those factors related to the safety of the children, and make its overall determination based on the best interests of the children. The court did this. The court did not consider Father's alleged abuse of Mother to the exclusion of all other factors, but rather found Father lacked the ability to provide a safe environment in which the Children's needs will best be met. While Father argues the relocation is not in the Children's best interest because of the disruption of leaving their community in Berks County, Father points to no evidence supporting this point.

Moreover, contrary to Father's assertion, the court did consider that Mother relocated without Father's consent and without giving him proper notice. However, the court found this situation was mitigated by Father's abuse of Mother. The court also acknowledged that Mother relocated with the Children to Somerset County, but nonetheless considered the resources and custodial parties available in each location and decided to grant the relocation. The court's decision was not unreasonable.

Next, we consider Father's second issue, challenging the court's decision to award Mother sole legal custody. The Child Custody Act defines "legal custody" as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious[,] and educational decisions." 23 Pa.C.S.A. § 5322. Accordingly, an award of shared legal custody requires the custodial parties to be able to "reach a consensus on decisions that affect a child's life, including medical, educational, and religious decisions.

*Rogowski v. Kirven*, 291 A.3d 50, 58 (Pa.Super. 2023). The court is to determine whom to award legal custody of a child after considering the custody factors in Section 5328(a), but it may come to a separate determination than its decision on physical custody. *S.T. v. R.W.*, 192 A.3d 1155, 1170 & n.15 (Pa.Super. 2018).[5]

Here, the court decided to award Mother sole legal custody because it did not trust Father to make decisions in the best interest of the Children, and believed the parties would not be able to quickly agree on topics related to legal custody. This was not unreasonable. While the parties have been able to cooperate regarding shared custody, Father concedes that their relationship is strained. Furthermore, even if some of the trial court's statements indicate it believed that Father should have treated L.K.M. as having an ASD diagnosis before he had one, the court understood that Father failed to even recognize L.K.M.'s need for a diagnosis and respond appropriately.

_____

[5] The trial court considered the factors for shared legal custody stated in *Yates v. Yates*, 963 A.2d 535, 542 (Pa.Super. 2008):

> (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible.

*Yates*, 963 A.2d at 542. While remaining persuasive, these factors have "been assimilated into the custody factors set forth in 23 Pa.C.S.A. § 5328(a)." *S.T. v. R.W.*, 192 A.3d at 1170 & n.15. We find no error of the court's recitation of the *Yates* factors, as the court also duly considered the other Section 5328(a) factors.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/20/2023