**David T. YATES, Appellant**

v.

**Jackie YATES, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 1, 2008.

Filed Dec. 31, 2008.

Howard J. Bashman, Willow Grove, for appellant.

Charissa J. Liller, New Hope, for appellee.

BEFORE: BOWES and PANELLA, JJ. and McEWEN, P.J.E.

OPINION BY BOWES, J.:

¶ 1 David Yates ("Father") appeals from the custody order entered on February 15, 2007, wherein the trial court granted shared legal custody of Ashley Yates to Father and Jackie Yates ("Mother"), awarded Father primary physical custody, and appointed a parenting coordinator to help the parties implement the custody order. We affirm in part, vacate in part, and remand with instructions.

¶ 2 In a prior appeal, this Court succinctly summarized the salient facts and procedural history of this contentious litigation as follows:

The battle for custody of [Ashley] began in 2002. The battle has been intense, involving many hearings in open court, as well as many settlement conferences. By late 2006, the parties had identified physical custody as a critical matter and had, to some extent at least, agreed to basic terms of physical custody and further agreed that, given the unrelentingly contentious relationship between the parents of [Ashley], a highly detailed final custody order would be required. The lower court then directed the parties to submit proposed terms for such a detailed custody order. The lower court's review of the parties' proposals revealed, perhaps predictably, certain points of agreement and certain points of disagreement. A hearing was held on February 2, 2007 in order to allow each parent an opportunity to present the merits of their respective proposals to the court before the court entered a final custody order.

At the February 2, 2007 hearing, [Father] began by urging that the level of cooperation between the parties was insufficient to allow shared legal custody, noting that [Mother] objected to [Father's] proposed annual meetings to review the ongoing vitality of the custody arrangements as [Ashley] matures, and preferred that the court appoint a parent coordinator, and, thereafter, proceeded to articulate other, more de-

tailed, issues of disagreement. [Mother's] presentation substantially tracked that of [Father], reinforcing the reasons for [Mother's] disagreement with various terms proposed by [Father], and familiarizing the court with the concept of appointing a parent coordinator to settle day-to-day parenting disputes.

*Yates v. Yates,* 936 A.2d 1191, 1192–93 (Pa.Super.2007) (internal citations to certified record omitted).

¶ 3 On February 15, 2007, the trial court entered a custody order wherein it granted the parties joint legal custody of Ashley, awarded Father primary physical custody, awarded Mother partial physical custody, outlined the parameters of the custody schedule, and appointed Natalie L. Famous, Esquire, as a parenting coordinator to assist the parties in implementing the custodial arrangement. In a concomitant order that the trial court entered on the same date and attached to the custody order, the trial court enumerated the terms of the parenting coordinator's appointment, including the length of her appointment and the scope of her authority, and it explained the decision-making process. Father filed a timely appeal on March 19, 2007.[1] Father contended that the trial court erred in (1) holding that he had agreed to shared legal custody, (2) finding that he consented to the appointment of a parenting coordinator, and (3) concluding that he waived appellate review of its decision to appoint the parenting coordinator. In its opinion filed pursuant to Pa.R.A.P.1925(a), the trial court reasoned that Father's complaints were unwarranted because Father had previously agreed to abide by the terms of the trial court's custody order.

¶ 4 On appeal, this Court rejected the trial court's reasoning and concluded that Father did not waive his right to challenge the trial court's decision simply because he previously had agreed to submit certain issues for the court's determination. Accordingly, we remanded the case with directions to the trial court to fashion "more specific factual findings and conclusions of law ... as to the substantive custody issues involved in order to allow this Court to perform a meaningful review of the lower court's orders...." *Id.* at 1195. On March 7, 2008, the trial court issued a thorough Rule 1925(a) opinion addressing Father's complaints and explaining its rationale.

¶ 5 The following issues are now ready for our consideration: (1) whether the trial court erred in granting shared legal custody; (2) whether the trial court erred in appointing a parenting coordinator; and (3) whether the trial court's February 15, 2007 custody order is procedurally flawed. *See* Father's brief at 9.

■■■ ¶ 6 In reviewing a custody order, our scope and standard of review are well established.

Our standard of review over a custody order is for a gross abuse of discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are

---

1. Ordinarily, the thirty-day appeal period would have expired on March 17, 2007; however, since that date fell on a Saturday, the thirty-day period expired on Monday, March 19, 2007. 1 Pa.C.S. § 1908.

not supported by competent evidence of record. Our paramount concern in child custody matters is the best interests of the children.

*Ottolini v. Barrett,* 954 A.2d 610, 612 (Pa.Super.2008) (internal citations omitted).

¶ 7 Since the trial court relied upon the appointment of a parenting coordinator to bolster its decision to grant mother shared legal custody, we begin by addressing that issue.

¶ 8 Parenting coordination is a relatively novel concept in Pennsylvania. Its purpose is to shield children from the effects of parenting conflicts and to help parents in contentious cases comply with custody orders and implement parenting plans.[2] The Association of Family and Conciliation Courts ("AFCC"), an interdisciplinary multi-jurisdictional association of professionals that appointed a task force to develop model standards of practice for parenting coordination, defined parenting coordination as

> a child-focused alternative dispute resolution process in which a mental health or legal professional with mediation training and experience assists high conflict parents to implement their parenting plan by facilitating the resolution of their disputes in a timely manner, educating parents about children's needs, and with prior approval of the parties and/or the court, making decisions within the scope of the court order or appointment contract.

Anderer, *supra* at 1082. *See also* Guidelines for Parenting Coordination, 44 Family Court Review 164–181 (2005). According to the AFCC task force, parent coordination is most appropriate in cases where, as here, "high-conflict parents have demonstrated their longer-term inability or unwillingness to make parenting decisions on their own, to comply with parenting agreements and orders, to reduce their child-related conflicts, and to protect their children from the impact of that conflict." 44 Family Court Review 164, 165.

¶ 9 Herein, the trial court concluded that its decision to appoint a parenting coordinator was a reasonable exercise of discretion and in Ashley's best interest. In reaching its decision, the trial court relied upon the recommendations and assessments of Dr. Don G. Seraydarian, the custody evaluator who has been involved in this case since 2003. The trial court observed that Dr. Seraydarian described the parents' relationship as "highly destructive, inflammatory and hostile." Trial Court Opinion, 3/7/08, at 10. Specifically, Dr. Seraydarian noted an intense level of animosity between parents, and he even characterized the relationship as "catastrophic." N.T. Hearing, 9/29/06, at 59–60.

¶ 10 Father's scattershot argument on appeal challenges the trial court's appointment of the parenting coordinator on several fronts. His primary complaint is that the trial court lacked authority to appoint a parenting coordinator. *See* Father's brief at 31. Father's less precise assertions include the contention that the ap-

---

**2.** At least one Pennsylvania county, Erie, adopted local rules authorizing the appointment of parenting coordinators and delineating their roles in high-conflict custody disputes. *See* Erie County Local Rules 1940.10—1940.16. Likewise, the Pennsylvania Supreme Court Domestic Relations Procedural Rules Committee is considering a proposed Rule of Civil Procedure and a model Order of Court that, if adopted, would unify parenting coordination procedures across the state. *See* Stephen J. Anderer, *Resolving High-conflict Custody Cases, Parenting Coordinators Can Offer a Way Out of Repeated Recourse to Court,* 31 PLW 1074 (2008).

pointment of the parenting coordinator is tantamount to an improper delegation of judicial decision-making authority.[3]

¶ 11 At the outset, we observe that Father's claim that he did not consent to the parenting coordinator's appointment is misleading. While Father initially opposed the idea of appointing a parenting coordinator, during the February 2, 2007 custody hearing, Father agreed, under oath, that he would permit the court to decide, *inter alia*, whether to employ a parenting coordinator. *See N.T.*, Custody Hearing, 2/2/07, at 39–42. If Father disapproved of a parenting coordinator's participation in this case, he simply could have objected to its inclusion with the matters the trial court would resolve. He did not do so. Instead, following an on-the-record colloquy, Father agreed to permit the trial court to determine this issue. Hence, we conclude that Father's claim is unsubstantiated.

¶ 12 We note that this Court previously rejected the trial court's use of the on-the-record colloquy to "short-circuit" Father's appellate rights. *Yates*, 936 A.2d at 1195. Significantly, however, this Court did not conclude that Father did not assent to the trial court's proposal; we found merely that Father did not waive his appellate rights by stipulating that the trial court could resolve the contested issues. *Id.* Accordingly, the claim fails.

■ ¶ 13 Next, we address Father's assertion that the appointment of the parenting coordinator is tantamount to an improper delegation of judicial decision-making authority. Specifically, relying upon our holding in *C.W. v. K.A. W.*, 774

A.2d 745, 749 (Pa.Super.2001), wherein we outlined the trial court's role and responsibilities during trial, Father contends that although the parenting coordinator is not a judicial officer, her decisions would have the force and effect of a court order. In *C.W.*, we held that a trial court improperly delegated its judicial duties to the guardian *ad litem* it had appointed in a custody dispute. This Court reasoned that since the function of the guardian *ad litem* is to represent minors and protect their interests, the trial court's repeated solicitation of advice from the guardian *ad litem*, its routine acceptance of advice concerning evidentiary rulings, and its wholesale adoption of factual findings was tantamount to an abuse of discretion. *Id.* at 740–50.

¶ 14 Contrary to Father's assertion, however, the trial court herein did not unilaterally delegate its judicial decision-making authority to the parenting coordinator. First, in its February 15, 2007 custody order, the trial court resolved the primary custody issues relating to legal custody, physical custody, and visitation. Hence, as the trial court adequately observed, "[T]he majority of details surrounding physical and legal custody ... were specifically addressed by this Court and not delegated to, or left to the discretion of the [parenting] [c]oordinator." Trial Court Opinion, 3/7/08, at 14. Indeed, the trial court empowered the parenting coordinator specifically to resolve only ancillary custody disputes, such as determining temporary variances in the custody schedule, exchanging information and communication, and coordinating Ashley's recreational and extracurricular activities.

---

**3.** Father's brief also makes passing criticisms concerning: (1) the possibility a party may be found in contempt for non-compliance with the parenting coordinator's decisions; (2) the grant of quasi-judicial immunity to the parenting coordinator; and (3) the manner the trial court divided the costs and fees associated with parenting coordination. *See* Father's brief at 30–31. Although Father failed to develop these assertions fully, the underlying contentions are subsumed within the properly presented claims we discuss herein.

We observe that our Supreme Court permits the limited delegation of judicial authority to address ancillary custody matters under similar circumstances where the decisions do not determine core issues regarding legal, physical, or shared custody. *See* Pa.R.C.P.1920.5(a)(2) (regarding appointment of Masters), and to a lesser extent, Pa.R.C.P.1915.4–2(b) (concerning hearing officer's report and recommended order).

¶ 15 Further, if the parties are dissatisfied with the parenting coordinator's decision, they can appeal it to the trial court. While the trial court initially envisioned a deferential standard of review, in its most recent opinion, the trial court conceded that *de novo* review is more appropriate. *See* Trial Court Opinion, 3/7/08, at 15–16. We agree that *de novo* review must be utilized. Accordingly, we vacate the portion of the trial court's order that precludes the court from reviewing the parenting coordinator's decisions *de novo,* and we remand the case with express direction to the trial court to implement *de novo* review.

¶ 16 Thus, unlike the facts underlying *C.W.,* in the case at bar, the trial court did not solicit substantive legal advice or adopt the factual findings from a non-judicial officer who was engaged to represent the interest of the subject of the custody case. Instead, the trial court instituted a detailed procedure to permit the parenting coordinator to resolve minor custody issues between the two high-conflict parents. Having concluded that the trial court resolved the central custody issues and retained judicial review over the parenting coordinator's decisions concerning the ancillary issues, we reject Father's complaint that the trial court's appointment of a parenting coordinator is tantamount to an improper delegation of judicial decision-making authority like the one

this Court confronted in *C.W.* Simply stated, in the case *sub judice,* the trial court will not merely substitute the parenting coordinator's judgment for its own.

¶ 17 We also reject Father's related complaint that the trial court misinterpreted Dr. Seraydarian's recommendation to appoint a parenting coordinator. Father contends that Dr. Seraydarian envisioned appointing a mental-health professional who is experienced working with high-conflict, dysfunctional relationships. Father reasons that since the trial court appointed an attorney as the parenting coordinator, and not a mental health professional, it failed to accomplish Dr. Seraydarian's recommendation. *See* Father's brief at 33. We disagree.

¶ 18 Dr. Seraydarian's recommendation focused upon the fractured relationship between Mother and Father and the need for a third party to resolve minor parenting conflicts, implement a parenting plan, increase productive communication, and ease the effects of the conflicts upon Ashley. While Dr. Seraydarian contemplated the trial court's appointment of a mental health professional to serve as parenting coordinator, at least initially, his recommendation was not predicated upon that appointment. N.T., 9/29/06, at 95. Indeed, he noted that in certain cases, clergy and family friends have been appointed. *Id.* In fact, the crux of Dr. Seraydarian's recommendation was that the parenting coordinator have experience with high-conflict cases and "be someone who would take a very strong approach with [parents]" because of the lack of communication. *Id.*

¶ 19 In appointing Attorney Famous, the trial court observed that Attorney Famous is "a highly respected Bucks County attorney whose practice is focused solely on Family law[.]" Trial Court Opinion, 3/7/08, at 9 n. 5. The trial court presided

over this custody dispute since 2006, and it clearly was comfortable appointing Attorney Famous as parenting coordinator. Nothing in the record suggests that Attorney Famous lacked the requisite skills, training, and experience to perform her duties as parenting coordinator. Thus, mindful of Dr. Seraydarian's recommendation and the AFCC's guidelines suggesting that trial courts appoint either mental health or legal professionals with adequate training and experience, we conclude the trial court did not commit an abuse of discretion in appointing Attorney Famous parenting coordinator in this case.

¶ 20 Moreover, to the extent Father now seeks to challenge Attorney Famous's qualifications, we observe that he raised this issue for the first time in his brief. Father did not assert this claim in his previous appeal or his concise statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b); therefore, the trial court did not address it in the Rule 1925(a) opinion it filed upon remand. As this argument was not raised in Father's Rule 1925(b) statement, it is waived. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998); *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 803 (Pa.Super.2007) ("any issue not raised in an appellant's Rule 1925(b) statement will be deemed waived for purposes of appellate review."). Accordingly, we will not address it.[4]

¶ 21 Next, we address Father's challenge to the trial court's decision to award shared legal custody of Ashley. Essentially, Father argues that under the facts of this contentious litigation, the trial court lacked sufficient reason to alter the *status quo* by divesting him of sole legal custody of Ashley. Again, we disagree.

¶ 22 In determining whether to award shared legal custody, the trial court must consider the following factors: (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible. *See Wiseman v. Wall*, 718 A.2d 844, 848 (Pa.Super.1998).

¶ 23 Father's claim involves the fourth factor. Specifically, Father cites his tumultuous relationship with Mother as evidence that shared legal custody was inappropriate. Father contends the parties' inability to communicate on the most basic level precluded the trial court from finding that sufficient cooperation existed upon which to award shared legal custody. *See* Father's brief at 28–29. For the following reasons, we disagree.

¶ 24 In addressing this factor, the trial court conceded that this case is replete with conflict between the parties; however, it also found that the most contentious issue, relating to physical custody, was resolved by agreement following extensive negotiation and compromise. The trial court also concluded that the parent coordinator and co-parent counseling would alleviate some of the underlying conflicts and promote a minimal level of cooperation. Trial Court Opinion, 3/7/08, at 25. We agree with the trial court's rationale.

---

4. Even if we addressed Father's claim, we would reject it because Father failed to proffer any facts of record to support his contention that Attorney Famous was not qualified to be appointed parenting coordinator.

¶ 25 The trial court's reasoning is based upon our holding in *Brown v. Eastburn,* 351 Pa.Super. 479, 506 A.2d 449, 450 (1986). In *Brown,* this Court confronted a similar issue concerning whether a minimal degree of cooperation existed between the parents for purposes of determining whether shared legal custody was appropriate. In reaching its conclusion that the record demonstrated a minimum level of cooperation, this Court noted that the parents previously had accommodated each other's needs in negotiating and implementing an earlier custody arrangement, and acting jointly, they twice selected psychiatrists to help resolve their custody disputes, each of whom recommended the parties share legal custody of the child. *Id.* at 451. Thus, the *Brown* Court concluded, "[A]lthough the parties' relationship may not be amicable, we cannot say that they have shown an inability to cooperate to a minimal degree or to isolate their personal conflicts from their role as parents." *Id.*

¶ 26 Herein, the trial court concluded that the facts of the case *sub judice* aligned with the considerations underlying our decision in *Brown.* Specifically, the trial court noted that Mother and Father were able to negotiate the terms of Ashley's physical custody and that Dr. Seraydarian recommended that Mother eventually be granted shared legal custody.

¶ 27 On appeal, Father counters that unlike the parents in *Brown,* he and Mother did not bargain their agreement directly, but rather, their respective attorneys actually brokered the deal. Father's claim presents a classic example of a distinction without a difference. Our focus is not whether the parties accomplished face-to-face negotiation. Instead, the salient point is that Mother and Father compromised their respective hard-line, self-serving positions in order to further Ashley's best interest. *See Smith v. Smith,* 307 Pa.Super. 544, 453 A.2d 1020, 1025 (1982) ("a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor."). Thus, contrary to Father's assertion, we find the parties' physical custody agreement demonstrates an ability to cooperate to a sufficiently minimal degree to justify shared legal custody.

¶ 28 Likewise, we reject Father's position that the instant case aligns with our decision in *Wiseman,* wherein we concluded that a minimal degree of cooperation did not exist because the parents in that case communicated primarily through a third party. Significantly, in *Johnson v. Lewis,* 870 A.2d 368, 376 (Pa.Super.2005), this Court distinguished the *Wiseman* Court's reasoning because the parents in *Wiseman* never were married, never had a meaningful relationship, and had virtually **no** history of communication except through litigation or third parties. In contrast, the parents in *Johnson* were once married in a loving relationship. *Id.* Herein, Mother and Father were once emotionally attached in a meaningful relationship that culminated in their 1999 marriage and remained intact for two years following Ashley's birth. Accordingly, we find that this case is equally distinguishable from *Wiseman.*

¶ 29 Father also points out that Dr. Seraydarian's recommendation that Mother receive shared legal custody was tempered by the expert's concomitant recommendation that Mother first carry out nine months of visitation, three of which he contemplated should be supervised, prior to receiving shared legal custody. However, as the trial court accurately observed, notwithstanding the transitional timetable,

Dr. Seraydarian believed that shared legal custody was, in fact, in Ashley's best interest. The trial court reasoned:

> [D]espite his recognition of the conflict between the parties, [Dr.] Seraydarian notes the benefits of having both parents involved in a child's life. We placed great weight on this recommendation as [Dr.] Seraydarian has been in the best position to understand what is in [Ashley's] best interests. Moreover, with the physical custody arrangement set up as primary/partial, shared legal custody will instill more normalcy and hopefully help to reduce the stress and conflict that has afflicted this family for the last six years. Excluding Mother from having a voice in educational, religious or other important aspects in [Ashley's] life would only create further frustration and alienation. In this instance, we agree with the view that the need to reach agreement on major child rearing decisions where both parents are on equal footing can create "an atmosphere of détente rather than hostility." David J. Miller, *Joint Custody*, 13 Fam. L.Q. 345, 364 (Fall 1979).

Trial Court Opinion, *supra* at 26 (citation to Dr. Seraydarian's report omitted). As the record supports the trial court's determination that shared legal custody is in Ashley's best interest, we will not disturb it.

¶ 30 Finally, we address Father's assertion that the trial court's order is flawed procedurally because it attempts to incorporate supposed terms to which the parties agreed during the February 2, 2007 custody hearing. Essentially, Father complains that the trial court's order failed to specify the precise terms of the parties' agreement or adequately detail the times and location of the custody exchanges. Father posits that the omitted terms potentially subject him to contempt for non-compliance with an unspecified provision. The trial court did not address this issue in its Rule 1925(a) opinion.

¶ 31 The following facts are relevant to our determination. As previously noted, during the February 2, 2007 custody hearing, Mother and Father agreed that Father would maintain primary physical custody of Ashley, and Mother would have partial physical custody. The parties also agreed that neither parent would employ corporal punishment to discipline Ashley. *See N.T.*, 2/2/07, at 42. The trial court enumerated the precise terms of the physical custody schedule, including times and location of the custody exchanges, in the February 15, 2007 custody order. In addition, however, the order provided, "The additional terms agreed to at the February 2, 2007, Court proceeding, as set forth in the attached transcript, are incorporated and made a part of this Order." *See* Custody Order, 2/15/07, at 3.

¶ 32 Mother counters that the terms outlined during the hearing and incorporated into the custody order are so apparent and clearly defined in the notes of testimony that Father's claim is frivolous. Mother's brief at 30–31. After scouring the transcripts of the February 2, 2007 hearing for the additional agreed-upon terms, we disagree with Mother's characterizations. In fact, other than the trial court's colloquy regarding the parenting coordinator and the parties' agreements to forgo corporal punishment when disciplining Ashley, we could find no additional agreed-upon terms. While we uncovered some concessions Father offered concerning which parent would be entitled to claim Ashley's dependency exemption for federal, state, and local income tax purposes (Father conceded the tax codes should govern the determination), and what is expected of a parent who refuses to alter the custody schedule to permit Ashley to attend special

events (Father suggested the refusing party provide a reasonable explanation), the record does not indicate whether Mother accepted those concessions or continued to object to Father's proposals generally. *See N.T.*, 2/2/07, at 17, 18. Likewise, while Mother agreed to pay ten percent of the parenting coordinator's normal fee, a term the trial court included in its order, and one hundred percent of the parenting coordinator's fees associated with an adverse determination, it is unclear whether Father agreed to the outcome-centered payment scheme. *Id.* at 28–29.[5] If any additional agreed-upon terms were discussed during the hearing, we could not discern them from the record.[6]

¶ 33 Hence, we agree with Father's contention that the trial court's incorporation of the unidentified terms purportedly agreed upon during the custody hearing creates unnecessary uncertainty. Accordingly, we vacate the portion of the custody order, wherein the trial court incorporated "[t]he additional terms agreed to at the February 2, 2007, Court proceeding ..." and upon remand, we direct the trial court to identify the specific terms it intends to enforce upon the parties. *See* Custody Order, 2/15/07, at 3.

¶ 34 Order affirmed in part, vacated in part, and case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

5. In any event, the trial court did not incorporate the latter term into the order outlining the parenting coordinator's powers. Instead, the trial court empowered the parenting coordinator to re-allocate the fees based upon the parties' conduct and the frivolity of the claim that gives rise to her services.

6. The trial court also sustained Mother's objection to Father's proposal that Mother be responsible for eighty percent of the costs associated with any motion to modify the proposed custody order that she might file within four years of the date it is entered.