J-A02032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ELIZABETH HOLT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL S. KLINE | : | |
| | : | |
| Appellant | : | No. 211 WDA 2022 |

Appeal from the Order Entered January 27, 2022
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD16-000209-005, Pacses 472115780

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: FEBRUARY 6, 2023**

Paul S. Kline (Appellant), *pro se*[1] appeals from the order denying his

exceptions to the trial court's award of child support.  We affirm.

The trial court summarized the case history as follows:

> [Elizabeth Holt (Mother)] and [Appellant] are the parents of
> one minor child ("Child") born in 2006.  Mother is 54 years old and
> is employed as a nurse.  [Appellant] is 56 years old and is an
> attorney who was recognized as being disabled by [the] Social
> Security Administration in 2016.[2]  As of the time of the hearing,
> [Appellant] exercised no overnight custody with the Child.
>
> The parties divorced by decree on August 1, 2019, and a
> support order was entered on September 9, 2019, following the
> settlement of the economic issues raised in the divorce.  At that
> time, [Appellant's] total monthly support obligation was $813 per

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother also appears *pro se*.

[2] Appellant, a former attorney with Reed Smith, was diagnosed with multiple
sclerosis.  Hearing Officer Report, 11/24/20, at 2.

month. That amount was later reduced to $716 per month after [Appellant] paid his share of the amount owed for Child's braces.

From here, the procedural history of this matter is skewed by the onset of the Covid-19 Pandemic and its effect on the [c]ourt's schedule. [Appellant] filed a Petition to Modify Support Order on March 5, 2020, and a hearing was scheduled for May 24, 2020[, but eventually occurred] on November 24, 2020.

At the hearing, during which [Appellant] was represented by counsel and Mother appeared *pro se*, [Appellant] testified to receiving $19,001 per year in private disability insurance, $11,256 per year in supplemental disability insurance, and $30,360 per year in Social Security Disability payments. [Appellant] also testified to [taking] IRA withdrawals in 2019 totaling $93,091 which he used for personal expenses. Given [Appellant's] ability to withdraw from his IRAs as needed, the Hearing Officer found it appropriate to impute [Appellant] with an additional $20,000 in annual income and ultimately calculated [Appellant's] monthly net income to be $9,765.97.

Trial Court Opinion, 5/13/22, at 1-2 (footnote added).

With regard to Mother,

[she] submitted two paystubs from her employer and the Hearing Officer calculated Mother's monthly net income from her employer to be $4,181.45. Mother also receives the Child's monthly social security derivative benefit of $1,265[FN1], resulting in a total monthly net income of $5,446.45 and a basic child support obligation of $1,186.42. However, pursuant to Pa.R.Civ.P. 1910.16-2 [(Rule 16-2)], the Hearing Officer was also required to deduct the Child's social security benefit from [Appellant's] support obligation, effectively bringing [Appellant's] support obligation down to zero. For several reasons … the Hearing Officer ultimately deviated from the guideline amount by 50% and calculated [Appellant's] final support obligation of $514.63 per month.

_____

[FN1] This amount was $1,245 at the time of the hearing but increased by $20 to $1,265 on January 1, 2020.

*Id.* at 2 (footnote in original).

Appellant filed exceptions to the Hearing Officer's recommendation. The trial court dismissed the exceptions and Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

1. Was it legal error to award Mother a 50% upward child support deviation from guidelines when, (a) based on Rule 16-2(b) derivative adjustments to income that are perceived as "unjust and inappropriate", but nullifying that Rule is not a listed deviation Factor, (b) a deviation is not "necessary", and (c) deviating would violate the Parties' Settlement Agreement and Final Order on Consent?

2. Was it an abuse of discretion to dismiss [Appellant's Pa.R.C.P. 1910.17 (Rule 17)] claim for retroactivity based on [Appellant's] three-week delay in filing?

3. Was it legal error and an abuse of discretion to penalize [Appellant] $20,000 where the Trial Court[] mistakenly believes transfer to Mother was by tax-free rollover when [Appellant's] testimony is contrary, and, when a [Qualified Domestic Relations Order (QDRO)] is not on the docket?

4. Was it legal error for the Trial Court not to consider and factor into the deviation analysis [Appellant's] federally-approved disability under Pa.R.C.P. 1910.16-5 (Rule 16-5)]?

5. Was it legal error for the Trial Court to consider income distributions from [Appellant's] post-[Equitable Distribution (ED)] IRA asset also as income when calculating child support, when imputing $20,000 of "hypothetical" income, and when applying a retroactive child support deviation?

Appellant's Brief at 3 (reordered for disposition).

We review support awards for an abuse of discretion. ***Spahr v. Spahr***, 869 A.2d 548, 551 (Pa. Super. 2005). "A finding that the court abused its discretion requires proof of more than a mere error in judgment, but rather

- 3 -

evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." ***Id.*** (citation omitted). "Support orders 'must be fair, non-confiscatory and attendant to the circumstances of the parties.'" ***Id.*** at 552 (quoting ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa. Super. 2000).

Support actions are governed by Pennsylvania Rules of Civil Procedure 1910.1 through 1910.50. Pertinently, Pa.R.C.P. 1910.16-1(d) provides:

**Rule 1910.16-1. Amount of Support. Support Guidelines**

\*     \*     \*

**(d)** Rebuttable Presumption. If the trier-of-fact determines that a party has a duty to pay support, there is a rebuttable presumption that the guideline-calculated support obligation is the correct support obligation.

> **(1) The presumption is rebutted if the trier-of-fact concludes in a written finding or states on the record that the guideline support obligation is unjust or inapprop**riate.
>
> **(2) The trier-of-fact shall consider the child's and parties' special needs and obligations, and apply the Pa.R.C.P. No. 1910.16-5 deviation factors, as appropriate**.

Pa.R.C.P. 1910.16-1(d) (2020) (emphasis added). With this in mind, we address the issues presented by Appellant.

> **1. Whether the trial court erred in awarding child support which deviated 50% upward from the guidelines.**

In his first issue, Appellant claims the trial court improperly adopted a 50% upward deviation from the support guidelines

- 4 -

(a) based on a perceived unjustness and inappropriateness in the proper application of [Pa.R.C.P. 91016-2(b) (Rule 16-2(b)], where such Rule is not a listed deviation factor; (b) deviating is not "necessary", and (c) deviating violates the parties' settlement agreement and Final Order on Consent.

Appellant's Brief at 13. We address each claim in turn.

First, Appellant claims the trial court improperly applied Rule 16-2(b) to arrive at an "unjust and inappropriate" result. *Id.* According to Appellant, deviation is to be granted "only pursuant to an exclusive list" of the nine deviation factors in Rule 16-5(b). *Id.* Therefore, Appellant asserts it was "legal error to grant Mother a deviation based on the [Hearing Officer's] recommendation that 'the guideline-calculated support amount, Rule 16-5(b), is unjust and inappropriate.'" *Id.*

"[T]he support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes … and the number of persons being supported." Pa.R.C.P. 1910.16-1(a). However, "a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." *Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009). Rule 16-5 provides:

**(a) Deviation**. If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

*Note*: The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors**. In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

> **(1)** unusual needs and unusual fixed obligations;
>
> **(2)** other support obligations of the parties;
>
> **(3)** other income in the household;
>
> **(4)** ages of the children;
>
> **(5)** the relative assets and liabilities of the parties;
>
> **(6)** medical expenses not covered by insurance;
>
> **(7) standard of living of the parties and their children;**
>
> **(8)** in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and
>
> **(9) other relevant and appropriate factors, including the best interests of the child or children.**

Pa.R.C.P. 1910.16-5 (2020) (emphasis added).

Rule 16-2 prescribes the impact of a child's social security derivative benefits on a parent's support obligation:

> If the obligee receives the child's benefit, the trier-of-fact shall deduct the child's benefit from the basic child support obligation of the party whose retirement or disability created the child's benefit.

Pa.R.C.P. 1910.16-2(b)(2)(B).

In the Report and Recommendations, the Hearing Officer addressed the standard of living of the parties and Child, as well as Child's best interests:

> [Appellant] leads a very comfortable lifestyle in comparison to Mother and [Child]. [Appellant] owns and resides in a patio home

in Presto, PA that cost $373,000.00 in May of 2018 when it was purchased, which was almost $60,000.00 more than the sale price of the parties' former marital residence when it was sold. According to [Appellant's] budget, [Appellant's] monthly mortgage payment is $2,393.09 (on which [Appellant] testified a balance remains of over $284,000) plus a $285.00 per month HOA fee for a total "house" payment of $2,678.09 for one person. Mother, to the contrary, did not have the ability to purchase a home once the marital residence was sold, and so she rents her current residence in Upper St. Clair at a cost of $1,700.00 per month (Ex, Q). Remarkably, and rather disingenuously, [Appellant] chastised Mother for choosing to remain in Upper St. Clair with the [C]hild, stating in an Our Family Wizard message of August 3, 2020 to her that "*Please consider the choices you made by living in Upper St. Clair and keeping [Child] with the most affluent children. There are plenty of 'less privileged' kids and reasonably priced apartments in the Crafton, Carnegie, Bridgeville area, Chartier's high school is excellent, It's not Upper St. Clair, but still very good. My vote always would have been in favor of a change for [Child]. No doubt that would be traumatic, but I see the good outweighing the bad.*" (Ex. E, #3, emphasis added).

[Appellant] also testified that he financed an $84,000.00 Porsche SUV and pays $1,147.34 per month for this vehicle, on which he has 2½ more years to pay (Ex. 25). [Appellant] testified that he is considering selling his vehicle because "it's too expensive" and he "doesn't enjoy it". He further testified that if he does sell, he is not sure if he will purchase another vehicle, stating he "doesn't feel as confident as he used to", or maybe he would buy a small used $4,000.00 Toyota. **The Hearing Officer does not find [Appellant's] testimony credible**, especially since he proudly acknowledged owning a Porsche, a luxury vehicle, since 2001. If, however, [Appellant] would find that a vehicle is no longer suitable for him and sells the Porsche, [Appellant] would eliminate over $1,100.00 in expense (not including insurance) from his budget. Mother, to the contrary, testified she leased a "bottom line" Toyota Corolla at a cost of $266.00 per month. Interestingly, as Mother pointed out during her testimony, each party listed $60.00 per month for fuel for his/her vehicle – yet Mother is the only party between the two with a work commute.

Additionally, as discussed above, Father has significant retirement assets totaling over $300,000.00 from which he withdraws funds as needed to supplement his income and pay for his expenses.

Father's monthly expenses for just himself total $6,350.36 according to his budget (Ex. 25), more than Mother's budget for three (Ex. Q). Additionally, Mother credibly testified that she is the primary caretaker for her older disabled child and incurs additional expenses, including an emotional support dog. Mother testified that due to a loophole with Medicaid, she will incur additional medical cost of at least $200.00 per month.

The Pennsylvania Support Guidelines are very clear in their pronouncement that "*the support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting his or her other expenditures*." Pa.R.C.P, 1910.16-1(a) (emphasis added).

Even more compelling, however, is the need to deviate for the best interests of [Child]. **The reallocation of Mother's share of the derivative benefits to the [C]hild, such that [Child] is now the designated recipient of 100% of the benefit, did nothing to increase the amount of the benefit being paid into the household of Mother and [C]hild**. Before the reallocation, the total income [from the derivative benefit] was $1,244.00 per month and after the reallocation, the total income was $1,245.00 per month. Mother was also receiving the $622.00 per month in base child support. **The impact, however, that the reallocation has on the calculation of child support is substantial**. When [Appellant's] net monthly income of $9,65.97 is combined with Mother's net monthly income and [Child's] social security benefit which totals $5,446.45, [Appellant's] monthly support obligation would be $1,186.42 from which [Child's] $1,265.00 per[-]month benefit would be subtracted pursuant to [Rule 16-2], thereby reducing the child support to zero ($0.00) and entirely absolving [Appellant] from any financial responsibility for base child support and increasing his available income by $622.00 per month, while Mother's household income concurrently suffers a loss of $622.00 per month. This is an absurd result, and one that is prejudicial to [Child's] best interests and irrevocably harmful to [Child], especially when considering the significant income and assets available to [Appellant] which allow him to afford such luxuries as an $1,100.00 per month Porsche payment, an amount equal to almost double that of his current $622.00 per month base child support obligation under the September 2019 Order.

There is one additional [factor] that the Hearing Officer finds is applicable in this case. The evidence was undisputed that [Appellant] exercises <u>no</u> overnight custody of [Child]. Additionally, Mother testified that in 2020 as of the date of the hearing, [Appellant] exercised only approximately 20 hours of partial custody with [Child], and nothing since late March or early April 2020. While this could be explained by the pandemic, even [Appellant] acknowledged in his September 2020 discovery responses that for the last several years prior to the pandemic, [Child] spent only about 5% of the week with him. The 2010 Explanatory Comment to Pa.R.C.P. 1910.16-4 states as follows: "*The basic support schedule incorporates an assumption that the children spend 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Upward deviation should be considered in cases in which the obligor has little or no contact with the children*." (emphasis added).

The Hearing Officer is mandated to apply Rule 1910.16-2(b)(2)(i)(A),(B) regarding treatment of [Child's] social security derivative benefits. This Hearing Officer finds that the guideline-calculated support amount, after applying this Rule, is unjust and inappropriate and warrants a significant deviation as authorized by Pa.R.C.P. 1910.16-2(d). **Given the financial inequities that result from application of the guidelines**, the Master finds that a 50% deviation is appropriate under the factual circumstances of this case and authorized by the deviation factors outlined hereinabove.

Hearing Officer Report and Recommendation, 8/16/21, at 6-7 (unnumbered)

(italic emphasis in original, bold emphasis added).

The trial court accepted the Hearing Officer's recommendation, explaining:

In the present case, the Hearing Officer considered the assets of the parties, their standards of living, and other relevant factors as required by Rule 1910.16-5 and found that [Appellant] could easily provide more support than the guidelines would require now that the derivative benefit is allocated in favor of the Child. [Appellant] testified to owning a home in a better area than where the parties had previously been living and to owning several

- 9 -

luxury cars since 2001. (Tr. 72:1 -5, 73:12-16) Based on his standard of living, [Appellant] would still have ample means for his reasonable living expenses after the upwards deviation. [Appellant's] continued payments are also necessary as demonstrated by Mother's testimony regarding her expenses as the Child's primary caretaker. (Tr. 109-115) In *Ricco* [*v. Novitski*, 874 A.2d 75 (Pa. Super. 2005),] **the [Superior] Court specifically noted that a party cannot be excused from their support obligation due to lucky circumstances unless they are genuinely unable to contribute to the child's reasonable needs**. As such, [the trial court] found that the Hearing Officer's [recommendation] was neither punitive nor confiscatory and that the deviation was both necessary and supported by the record.

This [c]ourt is also troubled by the ramifications of [Appellant's] argument. If [Appellant] is successful, then the [c]ourt would be unable to deviate from the guidelines in matters where a party's support obligation was adjusted due to a derivative benefit. Such a finding would seriously impair the [c]ourt's ability to render judgments that promote the best interests of the child.

Trial Court Opinion, 5/13/22, at 7-8 (emphasis added).

Our review reveals no error or abuse of discretion. The Hearing Officer and the trial court properly considered and applied the applicable Rules of Civil Procedure in deviating from the support guidelines.

Second, Appellant claims deviation is not "necessary." Appellant's Brief at 14-15. Appellant asserts the trial court improperly failed to determine whether Mother can "meet" her expenses, or whether a deviation is "necessary" for Mother to meet her expenses. *Id.* at 16. Appellant argues:

Where, as here, Mother's expenses are the solitary basis used by the trial court to demonstrate [Child's] "reasonable needs" or what is "necessary," the record contains insufficient evidence for Mother to meet her burden to demonstrate that a deviation is necessary, much less a 50% deviation. Insufficient evidence is available to

support the "necessity" of a 50% upward deviation, so the deviation should be reversed.

*Id.* at 18-19 (footnote and some capitalization omitted).

Our review discloses that Appellant did not preserve this issue in his Pa.R.A.P. 1925(b) statement, which identified the following issues:

1. Legal error to dismiss [Appellant's] 1910.17(a) retroactivity claim based on Mother's state of mind; irrelevant here.

2. Legal error to impute $20K income to [Appellant] based on finding that transfer to Mother was taxfree, yet no QDRO.

3. Legal error to deviate from satisfied Child Support. Guideline to nullify proper use of 1910.16-2 derivatives.

4. Legal error not to factor into the deviation analysis [Appellant's] federally-approved disability under 1910.16-5(b)(1).

5. Legal error to consider the value of [Appellant's] IRA asset as a deviation factor and as income available for support. The trial court did not address the issue in its opinion.

Concise Statement, 3/8/22. Because Appellant did not raise this issue in his concise statement, it is not preserved for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Yates v. Yates*, 963 A.2d 535, 542 (Pa. Super. 2008) (claims not included in the Rule 1925(b) statement are waived for appellate review).

Finally, Appellant claims the deviation violated the parties' 2019 Child Support Settlement Agreement. Appellant's Brief at 19. Again, Appellant waived this issue by not including it in his Pa.R.A.P. 1925(b) statement. *See*

Pa.R.A.P. 302(a); **Yates**, 963 A.2d at 542. Appellant's first issue does not merit relief.

**2. Whether the trial court erred in denying seven months' retroactive credit for Appellant's claim based on Rule 17.**

Appellant next argues the trial court erred in not awarding seven months' retroactive credit to Appellant based on his Rule 17 claim. Appellant's Brief at 25. Appellant argues the Hearing Officer improperly conditioned credit on whether Mother "willfully" failed to provide Appellant with notice. **Id.** Appellant acknowledges that Rule 17 provides:

> [M]odification of an existing court order may be retroactive to a date preceding the date of filing if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

Appellant's Brief at 25-26 (emphasis omitted) (quoting Pa.R.C.P. 1910.17(a)). Appellant claims he established "compelling reasons" based on his (1) *pro se* status and lack of experience in state-court and family law; (2) physical condition which prevented him from timely determining the validity of a modification claim; (3) lack of written notification from the Social Security Administration; and (4) filing for modification three weeks after receiving verbal notice from Mother. Appellant's Brief at 27-28. Appellant's issue is unavailing.

The Hearing Officer explained:

Pursuant to 23 Pa.C.S.A. § 4353(a), parties to a support proceeding are to notify domestic relations and other parties in

- 12 -

writing or in person within seven days "of any material change in circumstances relevant to the level of support of the administration of the support order, including but not limited to: (1) change of employment; and (2) change of personal address or change of address of any child receiving support." **Subparagraph (d) of that statute requires that failure to comply with this section must be "willful" in order to be adjudged in contempt.** Additionally, the case law addressing Section 4352 deals strictly with situations where an individual willfully fails to report a substantial increase in his income and where that party's blatant misrepresentation in that regard precluded the other party from filing a petition to modify. *See Krebs v. Krebs*, 944 A.2d 768 (Pa. Super. 2008) and *Maue v. Gilbert*, 839 A.2d 430 (Pa. Super. 2003). Willfulness and misrepresentations require knowledge, and **by [Appellant's] own admission, and Mother's credible testimony, Mother lacked any knowledge that the Social Security Administration's shifting its allocation of benefits to [Child] — when the amount of the benefits did not increase — would alter the calculation of [Appellant's] child support obligation**.

Hearing Officer Report and Recommendation, 8/16/21, at 3 (Hearing Officer's emphasis omitted, emphasis added). We adopt the Hearing Officer's sound reasoning in concluding that Appellant's second issue lacks merit.

**3. Whether the trial court improperly penalized Appellant $20,000 based on a mistaken belief that the transfer of funds to Mother was by a tax-free rollover.**

Appellant argues the trial court penalized him for withdrawing $20,000 from his IRA accounts, because he withdrew the money to comply with the parties' 2019 ED settlement. Appellant's Brief at 29-30. Appellant asserts:

(1) [Appellant's] unrefuted testimony is that the additional IRA withdrawals in 2019 were "taxable" to fund a $70,500 settlement with Mother that he paid in cash, (2) by imputing hypothetical withdrawals as income to [Appellant] from a post-ED-settled IRA account, both the [Hearing Officer] and [t]rial [c]ourt were double-dipping, and (3) the [t]rial [c]ourt's basis to impute

hypothetical income is founded on an erroneous belief that the transfer was rolled over and not taxed, rather than withdrawn and taxed; however, an IRA rollover would have required a [QDRO] pursuant to federal law, and a QDRO simply is not on the Docket.

Appellant's Brief at 31-32 (citations, footnote, and emphasis omitted).

The trial court addressed this issue as follows:

"When determining income available for child support, the court must consider all forms of income." *Berry v. Berry*, 898 A.2d 1100, 1104 (Pa. Super. 2006) (quoting *Miller v. Miller*, 783 A.2d 832, 835 (Pa. Super. 2001) (citation omitted)). Pa.R.Civ.P. 1910.16-2(a)(4) specifically highlights "pensions and all forms of retirement" in its summary of income sources to be considered in the calculation of a party's monthly gross income. Finally, it is this [c]ourt's obligation to consider the full nature and extent of a party's financial resources. *Com. ex rel. Hagerty v. Eyster*, 286 A.2d 665, 668 (Pa. Super. 1981).

Here, when asked about the disparity in his withdrawals from 2019 to 2020, [Appellant] stated the following:

Q: Why were your withdrawals in 2019 $93,091 and this year they are approximately half of that?

A: I was paying attorneys' fees. I was paying taxes. I owed an additional amount in taxes. I was paying Medicare, I was paying car payments, I was paying mortgage payments. If you add up the amounts of the disability payments that come in, they just cover my mortgage. So I have to withdraw from my accounts to pay my expenses.

(Tr. 15:1-9) Additionally, [Appellant] had already withdrawn $43,017[FN2] as of the hearing in 2020. At that point the need to pay his equitable distribution payments was well behind him and there were still five months remaining in the year. It is reasonable to expect that, barring a significant change in his expenses, [Appellant] would withdraw at least half that amount in the remaining months of 2020 (for a total that would still be $30,074 less than his 2019 withdrawals). As such, this [c]ourt found the Hearing Officer's calculation of [Appellant's] income to be reasonable and appropriate.

- 14 -

[FN2] The Hearing Officer's Report and Recommendation ultimately revise[d] this amount to $50,536.

Trial Court Opinion, 5/13/22, at 6-7.  We discern no abuse of discretion or error in the trial court's determination and adopt its analysis in concluding Appellant's third issue lacks merit.  ***See id.***

**4. Whether it was legal error for the trial court to not consider and factor into its analysis Appellant's federally approved disability under  Rule 16-5(b)(1).**

Appellant next argues the trial court erred by failing to consider his "unusual needs and unusual fixed obligations" in determining his support obligation.  Appellant's Brief at 33.  Appellant claims "his diagnosis with multiple sclerosis is fairly unusual and, due to his inability to work, drive, or care for himself, his needs in his mid-50's are unusual as well." ***Id.***  Appellant asserts the trial court's deviation analysis was incomplete, as his disability "affects other factors (5, 6, 7, and 9) relied upon by Mother and an "overarching" criterion, *i.e.*, [Appellant's] ability to pay." ***Id.*** at 34.  According to Appellant, the trial court improperly failed to consider "this relevant, countervailing deviation Factor." ***Id.***

Again, the trial court has capably rebutted Appellant's argument:

"[A] trial court generally has discretion to deviate from the guideline amount in a support case if the record supports the deviation. ***Silver***[,] 981 A.2d [at] 296 … (citing ***Ricco***[] 874 A.2d [at] 82 …).  When determining whether a deviation is warranted, the [c]ourt must consider "all the relevant factors" and any one factor is not necessarily determinative. ***Suzanne D. v. Stephen W.***, 65 A.3d 965, 972-73 (Pa. Super. 2013) (citation omitted).

Here, there is no evidence to suggest that the Hearing Officer did not consider [Appellant's] disability when deciding to deviate from the guidelines. To the contrary, the Hearing Officer's report goes through a lengthy analysis of several of the deviation factors including the relative assets of the parties, the standard of living of the parties, and [Child's] best interest. **While it is undisputed that [Appellant] is disabled, that is but one of several factors which the [c]ourt must weigh when determining to deviate from the guidelines. Without diminishing [Appellant's] disability, the [c]ourt noted that [Appellant] is still a member of the Pennsylvania Bar (Tr. 50:22) and continues to practice law** (Tr. 64:9-15). Therefore, after considering all relevant factors, [the trial court] did not find that a deviation based on [Appellant's] disability was warranted at this time.

Trial Court Opinion, 5/13/22, at 8-9.

We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. **Sichelstiel v. Sichelstiel**, 272 A.3d 530, 534 (Pa. Super. 2022). As the evidence supports the trial court's analysis, we discern no error or abuse of discretion with regard to Appellant's fourth issue.

**5. Whether the trial court erred in considering withdrawals from Appellant's post-settlement IRA as income when deviating from the support guidelines.**

In his final issue, Appellant claims the trial court erred in considering his income from a non-marital IRA account opened after the parties' equitable distribution. Appellant's Brief at 34-35. Appellant contends:

The trial court triple dipped into the same IRA when imputing $20,000 of income, and then quadrupled-dipped into the same IRA when adjusting [Appellant's] income for a deviation.

**Id.** at 37 (some capitalization omitted).

The trial court responded:

[Appellant] cites **Miller v. Miller**, 783 A.2d 832, 835 (Pa. Super. 2001), as a comparable authority on this issue. The Court in **Miller** first acknowledged that money included in an individual's income for child support purposes cannot also be a marital asset subject to equitable distribution. It then held the reverse to also be true: money received from the sale of a marital asset cannot also be included in an individual's income for purpose of determining child support.

Here, **as [Appellant] stated several times throughout his brief, his IRA was determined to be a "nonmarital" asset at settlement. And so, there is no "double dipping" because there was no initial "dip"**. [Appellant's] IRAs were held separate and apart during equitable distribution and thus can and should be considered when determining [Appellant's] income for [] calculating child support. Based on the holding in **Miller**, there may have been "double dipping" if the retirement savings had been found to be a marital asset subject to equitable distribution, but as that was not the case, this [c]ourt found no error with the Hearing Officer's decision.

In the alternative, [Appellant] also argues that his retirement assets should not be considered because he plans to transfer the assets to an irrevocable trust for the benefit of Child as soon as he enters an extended care facility. This [c]ourt cannot consider plans that have not yet come to fruition. However, in the event that [Appellant] had completed such a transfer, it should be noted that the Supreme Court of Pennsylvania has held that contributions to a trust are not to be considered in determining whether a parent's support obligation should be reduced. **Hanrahan v. Bakker**, 186 A.3d 958, 980 (Pa. 2018).

Trial Court Opinion, 5/13/22, at 9-10. We agree with the trial court's primary and alternative analyses. **See id.** Thus, Appellant's fifth issue does not merit relief.

Order affirmed.

- 17 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2023